IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:17-cv-01375-LTB

BRADLEY L. MOORE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

ORDER

---

Plaintiff Bradley L. Moore, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal.

After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings.

### I.    STATEMENT OF THE CASE

Plaintiff is a 58 year-old man who has a GED. [Administrative Record ("AR") 123] He seeks judicial review of SSA's decision denying his application for DIB. Pl.'s Br., ECF No. 21 at 1. Plaintiff filed his application in March 2014 alleging that his disability began in March 2012 (although this was amended during an oral hearing

1

to November 2012). [AR 115, 250]

The application was initially denied on May 14, 2014. [AR 156] The Administrative Law Judge ("ALJ") conducted two evidentiary hearings and issued a written ruling on September 23, 2015. [AR 95–107, 113–19, 120–51] In that ruling, the ALJ denied Plaintiff's application on the basis that he was not disabled because, considering his age, education, and work experience, he had the residual functional capacity to perform jobs that exist in significant numbers in the national economy. [AR 106] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–3]; *see* 20 C.F.R. §404.981. Plaintiff timely filed his complaint with this court seeking review of SSA's final decision. ECF No. 1.

## II. RELEVANT MEDICAL HISTORY

In November 2012, Plaintiff fell and had an MRI showing foraminal narrowing, osteophytes, and disc protrusion. [AR 751] He also had disc degeneration, numbing in his arm, and a severely limited range of motion in his neck. [*Id.*] Jaymi Devans, FNP, and others from the Salud Family Health Centers saw Plaintiff over the proceeding years. [*See e.g.* AR 690, 698, 702, 718, 770] Devans stated that Plaintiff was in a cervical collar which allowed no movement of his head nor lifting of his arms and was in a great deal of pain. [AR 801] Devans noted that Plaintiff's lack of insurance limited his referral options. [AR 790]

Plaintiff was prescribed Oxycodone and told Devans he would attempt to obtain Medicaid. [AR 788] He entered into a narcotics contract after finishing the

2

medication early and continued his attempt to obtain Medicare after initial denial. [AR 785–86] Plaintiff's pain persisted and he sought pain management, even though he would have to pay without insurance. [AR 779] Plaintiff began to taper his medicine and managed his pain. [AR 772]

Past his date last insured, Plaintiff noted that his back and neck pain flared when he had to take a flight. [AR 770] In early 2014, after being approved for Medicaid, Plaintiff underwent a decompression and fusion surgery. [AR 363, 801, 816] A few weeks after the surgery, he was noted to be doing well and was happy as he had regained function and sensation in his right arm and hand, but was with similar pain as to before the surgery. [AR 712] However, Plaintiff fell again in mid-2014, leading to severe back pain and seeking other options despite being on a high dose of pain medication. [AR 706–08] Plaintiff had lumbar foraminotomy surgery and subsequent infections related to the surgery. [AR 503–04, 698, 859] In 2015, Plaintiff underwent another fusion surgery. [AR 834] This surgery failed and in 2016, he had yet another spinal fusion surgery. [AR 17–20]

### III. LEGAL STANDARDS

#### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining

3

whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. 20 C.F.R. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what he is still able to do despite his impairments—and asks whether the claimant can do any of his "past relevant work" given that RFC. 20 C.F.R. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

In contrast with step five, the claimant has "the burden of establishing a

4

prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *Kellams v. Berryhill*, 696 F. App'x 909, 911 (10th Cir. 2017). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

### IV. THE ALJ'S RULING

In his ruling, the ALJ followed the five-step analysis outlined *supra*. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful

5

activity during the period from alleged onset date of March 1, 2012 through his date last insured of June 30, 2013. [AR 100] Under step two, the ALJ determined that Plaintiff had the "following severe impairments: herniation of cervical intervertebral disc with radiculopathy and hepatitis C." [*Id.*]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [*Id.*] The ALJ found that Plaintiff had the RFC to perform light work except that he was limited in that he could

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 4 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The claimant can never climb ladders, ropes, or scaffolds, but can otherwise occasionally climb, stoop, kneel, crouch, and crawl. The claimant was unable to reach overhead more than occasionally. The claimant must avoid concentrated exposure to extreme cold and hazards such as unprotected heights. The claimant required a sit-stand option every 20 minutes, for up to 5 minutes. The claimant was unable to move his head to the left, right, or up and down, and must leave his head in a static posture.

[AR 101]

The ALJ found that Plaintiff was unable to perform past relevant work, fulfilling step four. [AR 105] In the fifth and final step, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. [AR 106–07] The ALJ supported his decision based in part by the testimony of the VE and related hypotheticals, and found that Plaintiff could be a merchandise marker, cashier, or collator operator. [AR 107] Thus, the ALJ concluded that Plaintiff is not disabled. [*Id.*]

## V. ISSUE ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ erred solely by failing to properly evaluate the credibility of Plaintiff's subjective complaints of pain. Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's credibility by: (1) ignoring Plaintiff's attempt to seek care for his neck pain; (2) failing to consider the effectiveness of Plaintiff's pain medication; (3) failing to consider the significance of Plaintiff's struggle to obtain Medicaid; (4) selectively choosing parts of the record without sufficient context; and (5) misinterpreting evidence from after Plaintiff's date last insured.

### A. Plaintiff's credibility determination

Subjective complaints of pain are considered by the ALJ in evaluating whether a claimant has a disability. 20 C.F.R. § 404.1529. Credibility determinations are particularly suited to the finder of fact and must be supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). A claimant's subjective allegation of pain is not by itself sufficient to establish disability. *Franklin v. Astrue*, 450 F. App'x 782, 789 (10th Cir. 2011) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)) (unpublished).

Instead, the ALJ must determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if there was a "loose nexus" between the impairment and the subjective allegations of pain; and (3) when considering all the evidence, the pain was in fact disabling. *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir. 1992)); *see* SSR 96-7p, 1996 WL 374186 at *4 (Jul. 2, 1996)) ("When evaluating the credibility of an individual's statements,

the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.").

The ALJ must consider a variety of factors in determining credibility, including

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7.[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing SSR 96-7p, 1996 WL 374186 at *3) (alterations in original).

In the hearing, Plaintiff spoke to his experiences of pain and his ability to work, both before and after his date last insured. He noted that in 2012 and 2013 he was restricted from lifting over 25 to 50 pounds. [AR 125] Plaintiff stated that he applied to work at two businesses "thinking maybe the [sic] had some kind of program where they dealt with handicapped . . . and they told me because of the medications and restrictions they couldn't help me." [AR 125]

He added that at the time of the hearing, his neck and arms seemed better, but he had problems with his back and hip. [AR 127] Between his first fall and first surgery, Plaintiff stated he could sit between 15 to 20 minutes and stand between 10 to 15 minutes before he was uncomfortable. [*Id.*] Additionally he would need to lie down at various times "to get the pain to settle down enough to where the pain

8

medicine would work." [AR 129] At that time, Plaintiff was living in a camper and stated he could cook by microwaving food, but he had difficulties doing laundry and issues with shopping because he could not lift items off the shelf. [AR 139–40]

Before the first surgery, Plaintiff started having problems walking accompanied by pain in his left hip and his back, which lead to him not sleeping. [AR 133] He added that the back surgery he had in 2015 helped alleviate some pain and he was generally in better shape, but he was still limited in his ability to walk and was sore. [AR 134–37]

In his decision, the ALJ discussed Plaintiff's credibility. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [AR 102]

The ALJ noted that much of the evidence in the record occurred after Plaintiff's date last insured (June 30, 2013), and as such was irrelevant. [*Id.*] The ALJ found that "not only does the sparse objective medical evidence prior to the date last insured fail to support fully the claimant's allegations of disabling symptoms and limitations, as discussed below, consideration of other relevant factors also fails to support giving full credibility credit to the claimant's alleged symptoms and complaints." [*Id.*]

Regarding Plaintiff's initial fall, the ALJ noted that although Plaintiff alleged this to be the catalyst of his inability to work, he was already unemployed and had

9

been living in a trailer parked behind a friend's home. [AR 103] The ALJ pointed to the consistent notations which read that Plaintiff was alert and in no apparent distress during his medical appointments. [*Id.*] The ALJ noted that Plaintiff requested a referral to a pain management option instead of tapering his narcotic medication. [*Id.*] The ALJ noted an appointment where Plaintiff sought treatment for stomach pain, but did not mention his neck pain at that time. [*Id.*]

The ALJ added that, although Plaintiff "relayed having difficultly remembering specific limitations prior the date last insured, [he] nonetheless testified that between 2012 and 2013, he had work-related restrictions to include lifting between 25 and 50 pounds and that he believed that he had restrictions with bending and squatting." [AR 103] The ALJ added that Plaintiff "had no difficulty with cooking, and had applied for work at Home Depot and Walmart, thus further suggesting that his limitations during this time were not as severe as to prevent all work activity." [AR 104]

Plaintiff argues that the ALJ seemed to disregard that Plaintiff sought care for his neck pain and did not consider neither the effectiveness of Plaintiff's pain medication, nor the effect of Plaintiff's attempts to obtain Medicaid. Pl.'s Opening Br, ECF No. 21 at 7–8. I disagree.

Despite Plaintiff's argument, the ALJ does not claim necessarily that Plaintiff failed to seek treatment for his neck pain. And where the ALJ did intonate this, he provided sufficient explanation. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (ALJ properly made an adverse credibility ruling when "clinical

10

examinations routinely showed a normal gait and full (5/5) muscle strength, grip strength, and range of motion in his right arm . . . .") (unpublished).

The ALJ noted "sparse objective medical evidence" to support Plaintiff's claims. [AR 102] The ALJ added that "consideration of other relevant factors" lead him to his conclusions on Plaintiff's alleged symptoms. [*Id.*] Then, the ALJ accurately recounted the medical records concerning Plaintiff's neck pain. [AR 103, 733–51] He noted the medications prescribed and that Plaintiff was denied Medicaid and was reapplying. [AR 103] He discussed the tapering of the medications, the narcotics contract, and the medical appointments where Plaintiff complained of neck pain, and the appointments where he did not. [*Id.*]

Plaintiff argues that he was motivated and actively sought treatment and notes the ALJ should consider a claimant's "persistent" attempt to find relief for his pain. ECF No. 26 at 2–3 (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)). Although it was not an in-depth section of his decision, the ALJ did just that, writing that Plaintiff "requested a referral to pain management and indicated that he would try to find a way to pay for this expense out of pocket." [AR 103]

Plaintiff additionally contends that the ALJ took Plaintiff's attempt to work out of context in that the ALJ did not note that Plaintiff was denied work because he could not find a job that accommodated his disabilities. ECF No. 21 at 9. However, his mere attempt at work is an appropriate consideration for the ALJ. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) ("The ALJ also noted that,

11

on two separate occasions . . . [the plaintiff] had expressed an interest in returning to work and school.").

Plaintiff argues that the ALJ misinterpreted Plaintiff's testimony when the ALJ reasoned that Plaintiff's ability to cook impinged Plaintiff's credibility. ECF No. 21 at 10. Plaintiff further claims that the ALJ did not consider other daily activities where Plaintiff did need assistance. *Id*. It is true that the ALJ did not specifically mention Plaintiff's difficulties in doing laundry, shopping, and cleaning up after his dogs. [AR 139–40] But these were the subject of brief conversation in the hearing, and were not especially severe limitations. For example, Plaintiff states he could not lift dog food off the shelf while shopping, but would still feed his dogs. [AR 140] He also noted that he took care of the camper in which he lived and that he provided for himself by putting a "microwave dinner in the oven." [AR 139–140]

The ALJ appropriately considered this information and provided sufficient explanation, especially considering that the daily activities were not the only factor on which he based the adverse credibility determination. *Watts v. Berryhill*, 705 F. App'x 759, 764 (10th Cir. 2017) (holding that ALJ did not err when he described the inconsistencies between the plaintiff's complaints and her daily activities and did not solely consider those daily activities) (unpublished).

As the Tenth Circuit has held, an ALJ does not necessarily err if he does not discuss in detail testimony on a claimant's "symptoms, limitations, daily activities, and lack of improvement with treatment." *Megginson v. Astrue*, 489 F. App'x at

12

263. The ALJ need not recite a formalistic factor-by-factor recitation of the evidence, but must merely set forth the specific evidence he relies upon in evaluating the claimant's credibility. *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). However, this inquiry does not end here because of the ALJ's decision to disregard essentially all the evidence after Plaintiff's date last insured.

### B. Considering evidence past date last insured

Plaintiff argues that the ALJ erred in multiple ways concerning his consideration of Plaintiff's evidence after his date last insured. First, Plaintiff notes that the ALJ stated that the evidence after his date last insured was irrelevant, but then inappropriately relied upon some of that evidence in his decision. Further, Plaintiff contends that this tranche of evidence is in fact relevant, and the ALJ did not explain why he felt it irrelevant. To this, SSA states that "[e]ven if the ALJ should have considered subsequent records, they do not differ materially from the records the ALJ considered in finding Plaintiff not disabled." ECF No. 23 at 11.

A claimant must establish he had a disability on or before his date last insured. *Townsend v. Chater*, 91 F.3d 160 (10th Cir. 1996); 42 U.S.C. § 423(a)(1). It is the ALJ's task to determine whether a claimant was capable of returning to his past relevant work on or before that date last insured. *Id.* "[E]vidence documenting a claimant's condition after [his] date last insured may be considered if it relates to the insured period." *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017) (citing *Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006)) (unpublished).

Here, the ALJ looked to treatment records the month beyond the date last insured that identified that Plaintiff "had recently traveled via airline to take care

13

of a family member earlier in the month, thus suggesting that [his] impairments at the time of his date last insured were not as serious as alleged as part of his initial application for benefits and subsequent appeal." [*Id.*]

The ALJ specified that he considered evidence past the date last insured because it related to Plaintiff's overall credibility, but nonetheless found it irrelevant to the finding of disability prior to the date last insured. [AR 104] The ALJ explained that "while it is sometimes reasonable to infer that evidence, post date last insured was present prior to the date last insured, the medical evidence, activities of daily living, and history of conservative treatment weigh against that inference." [*Id.*] He continued that "evidence prior to the date last insured is more persuasive in this case and demonstrates the claimant was able to perform work at least at the light exertional level." [*Id.*]

As summarized *supra*, Plaintiff had extensive medical concerns after his date last insured, including multiple fusion surgeries. Plaintiff notes that these records are, in relevant part, probative of his condition prior to his date last insured because Plaintiff began to receive additional medical treatment *after* his date last insured as he, at that point, was approved for Medicaid. ECF No. 21 at 12. Plaintiff argues that his continuing treatment weighs against the ALJ's decision and the ALJ should have at least explained why this information was irrelevant. *Id.* I agree.

Plaintiff appropriately argues that there are legitimate reasons why relevant medical evidence may not be contemporaneous with the period of the disability at issue. *Id.*; *Huston v. Bowen*, 838 F.2d 1125, 1133 n.7 (10th Cir. 1988) ("[S]upporting

14

medical evidence need not be developed simultaneously with the onset of disabling pain in every case" and "[i]n some situations it will be enough if, at some point, objective medical evidence is developed that, in combination with nonmedical evidence, supports a finding of disability during the period at issue.").

In *Hardman v. Barnhart*, the plaintiff had an MRI performed after his date last insured. 362 F.3d 676, 677 (10th Cir. 2004). The court remanded, in part, so the ALJ could consider that MRI because the court found it may substantiate the plaintiff's credibility on his pain. *Id.* at 681. In *Hardman*, the ALJ did not have the opportunity to view the MRI at first because the it occurred after the ALJ's decision and SSA's "Appeals Council considered the new MRI evidence, but concluded, without explanation, that it did not provide a basis for changing the ALJ's decision." *Id.* at 678.

That procedural posture did not occur here, as the ALJ had the pertinent evidence from after Plaintiff's date last insured. [AR 103–04] However, the ALJ stated he found evidence after the date last insured irrelevant, but did not provide explanation why "evidence prior to the date last insured is more persuasive in this case and demonstrates the claimant was able to perform work at least at the light exertional level." [AR 104] It escapes me how multiple fusion surgeries do not provide at least some relevance to Plaintiff's credibility concerning allegations of pain during the relevant period. I presume that Plaintiff and his counsel pursued appropriate actions regarding his state after his date last insured to which this case relates.

Thus, the ALJ "failed to discuss the significantly probative evidence

15

supporting claimant's allegations upon which he chose not to rely." *Hardman v. Barnhart*, 362 F.3d at 681. As explained *supra*, this evidence may lead the ALJ to find Plaintiff's subjective complaints of pain more credible. Therefore, the ALJ must reconsider Plaintiff's credibility after providing more analysis regarding the evidence after his date last insured.

## VI. CONCLUSION

For the above reasons, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.

Dated: November 5, 2018, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE